# Fry Glass Company, Appellant, *v.* McKee Glass Company.

*Contract—License—Patents—Technical words—Trade words.*

Where a license contract provides that all "pressed glass blanks for cutting," which shall be used or sold by the licensee shall be subjected to a finishing operation by some of the methods covered by the letters patent issued to the licensor, the latter is not entitled

to an injunction to prevent the licensee from selling blanks made from "lime glass" without first subjecting them to the finishing operation of plaintiff's invention, where it appears as a fact that the words "pressed glass blanks for cutting" meant in the trade only such as were made from "lead glass," it further appearing from the wording of the agreement that its whole purpose was to require the use of the invention only on blanks which were used in the manufacture of "cut glass" and to prohibit their use on blanks used in the manufacture of "imitation cut glass."

Argued November 4, 1912. Appeal, No. 161, Oct. T., 1912, by plaintiff, from decree of C. P. Westmoreland Co., No. 784, dismissing bill in equity in case of H. C. Fry Glass Co. v. McKee Glass Co., and A. J. Smith. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

DOTY, P. J., filed the following opinion:

1. That the H. C. Fry Glass Company is engaged in the manufacture and sale of glassware, including among other articles what are known as "pressed glass blanks for cutting," and the said company is the owner of certain letters patent for processes, tools and apparatus which are used in the polishing of the interior surfaces of the articles mentioned.

2. That the McKee Glass Company is also engaged in the manufacture and sale of glassware; that the aforesaid companies, parties hereto, on the 9th June, 1910, entered into a written agreement, under which, subject to certain terms and conditions specified therein, a license was granted to the defendant company to use in the manufacture of pressed glass blanks for cutting the methods and apparatus described in the letters patents aforesaid.

3. That a copy of said instrument of writing is attached to the bill filed in this case. It recites: "And whereas in certain suits in equity heretofore brought in the Circuit Court of the United States for the Western

District of Pennsylvania against the licensee (and its predecessors) for infringement of certain letters patents ......it has been adjudged and decreed by the said court that each and all of said last-named letters patents are in all respects good and valid in law, and that the said defendants have infringed the same, and the said licensee has been enjoined from any further infringement thereof."

4. That the said instrument of writing, in paragraph three, provides further as follows:

"All pressed glass blanks for cutting which shall be sold or otherwise disposed of by the licensee during the term of this license, or which shall be used by it in the manufacture of cut glassware, shall be subjected, prior to such sale or use, to a finishing operation involving the practice of some one or more of the inventions described and claimed in some one or more of the said letters patent, or other letters patent which may hereafter be obtained and made subject to the provisions hereof. ......The rights herein granted are expressly limited to the practice of the invention hereby covered in the manufacture of pressed glass blanks for cutting, to be sold only to cutting houses for use in the manufacture of cut glassware; and it is understood that the practice of any of said inventions by the licensee in finishing glassware to be put upon the market without cutting, otherwise known as pressed glassware, or sold to other than cutting houses, will be an infringement of the letters patent therefor and a violation of the injunctions heretofore issued as above recited; it being the intention and purpose of this license that the said patented inventions shall not be used by the licensee in the manufacture of "imitation cut glassware" or other pressed glassware. By "blanks for cutting" is meant blanks which are not put upon the market until the entire pattern pressed on the exterior of said blanks has been cut over and finished by the implements used in the manufacture of what is commonly called "cut glass."

5. That A. J. Smith, the other defendant herein, is the president of the McKee Glass Company and was likewise a party to the said instrument of writing and is bound individually by the terms and conditions of the said agreement.

6. That the plaintiff alleges that the defendants have violated that portion of the contract set forth in the third paragraph in that since the acceptance of the said license they have advertised and sold pressed blanks for cutting which were not subjected prior to such sale to a finishing operation involving the practice of some one or more of the inventions described and claimed in the letters patent aforesaid; that such sales have been at lower prices than those specified in said instrument; that no accounting has been made of such sales, and that by reason of such violation of the terms of the license the plaintiff company has been greatly damaged.

7. That the defendants deny that they have violated as set forth above or in any way the provisions of the license; that blanks for cutting as provided in the agreement, were not advertised or sold until they had been subjected to a finishing operation involving the use of some of the said inventions; that "pressed glass blanks for cutting" is a trade term which only includes those made from "lead glass"; that before and since the agreement of 9th June, 1910, it has been the custom of the McKee Glass Company to make and sell commercial articles of different designs, sizes, shapes and patterns manufactured from "lime glass," without making use of any of the inventions described in the said letters patents.

8. That the words "pressed glass blanks for cutting" found in the agreement are used in the trade sense and include such only as are made from lead glass.

### CONCLUSIONS OF LAW.

1. As it has been found that "blanks for cutting" mean only such as are made from lead glass, the defend-

ants did not violate the contract by selling blanks made from lime glass without first subjecting them to the finishing operation of plaintiff's inventions.

2. That the license bearing date 9th June 1910, by its terms and conditions covers only "blanks for cutting" made from lead glass.

3. That the bill be dismissed at plaintiff's cost.

### DISCUSSION.

The investigation has taken a wide range and much testimony has been introduced. The issue, however, is readily understood as there is only one material fact in dispute and the case turns briefly on a question of law. The contract, which is called a license, provides that all pressed glass blanks for cutting which shall be used or sold by the licensee shall be subjected to a finishing operation by some of the methods covered by the letters patent issued to the licensor. All blanks made out of lead glass were subjected to the operation required by the contract; they were sold at the scheduled prices and an accounting was made therefor.

The defendants, however, sold other blanks for cutting at lower prices than those specified in the instrument and without subjecting them to the finishing process required by the contract. Such blanks were made out of lime glass. The defendants contend that the sale of blanks made out of lime glass was not in violation of the contract. Such contention is resisted by the plaintiff company and hence the whole case turns on the construction of the contract and the meaning of the words "pressed glass blanks for cutting."

It would seem that there should be no trouble about the interpretation of this contract. It sets forth with reasonable clearness, although with some waste of words, the understanding of the parties. It provides that "all pressed glass blanks for cutting" shall be subjected to the finishing process. To one unfamiliar with the terms used in the glass trade, it would appear that

this provision should give rise to no misunderstanding. The language is plain and comprehensive. If we should read no farther than the first clause of the third paragraph it would seem plain that the licensee could not sell any kind of a pressed glass blank for cutting unless subjected to the finishing operation provided in the contract. As we read on, however, it is also plain that such was not the meaning intended because it is expressly provided "that the said patented inventions shall not be used by the licensee in the manufacture of 'imitation cut glassware' or other pressed glassware." The whole idea was to confine the use of the inventions to the finishing of glass articles from which "cut glass" was made. The contract distinctly recognizes the possibility of applying the inventions to other uses and, therefore, prohibits their use in the manufacture of "imitation cut glassware." This is further evident from the condition prescribed in regard to the sale of blanks as follows: "All blanks purchased under this agreement are sold subject to the express condition that they shall not be re-sold until they have been converted into the product known as cut glass." The contract did not prohibit the licensee from manufacturing and selling ordinary pressed glassware or imitation cut glassware. The only restriction was that the patented inventions should not be used "in the manufacture of imitation cut glassware or other pressed glassware." The evidence shows that the inventions were not used in the manufacture of imitation cut glassware. The licensee continued to make and sell pressed glassware from which was made the imitation cut glass. And in plain language the right to do so is recognized in the contract itself. Prior to the time of the contract the imitation of cut glass was not much of a success. Since that time by a new process an article is produced which only an expert can distinguish from genuine cut glass. The plaintiff complains that the glassware thus sent out is not subjected to the operation provided in the contract but such complaint is not justi-

fied as the contract expressly prohibits such use of the inventions. The contract must be enforced to carry out the intention of the parties at the time it was made and not changed to meet new conditions which have arisen.

The contract further sets forth that "by 'blanks for cutting' is meant blanks which are not put upon the market until the entire pattern pressed on the exterior of said blanks has been cut over and finished by the implements used in the manufacture of what is commonly called 'cut glass.'" Thus showing that the whole purpose of the agreement was to require the use of the inventions only on blanks which were used in the manufacture of "cut glass" and to prohibit their use on blanks used in the manufacture of "imitation cut glass."

On the theory that the meaning of the contract was doubtful because of the use of technical words and trade terms much parol testimony was introduced. It must be conceded that it will require one acquainted with the glass business to define a "blank" or to tell what is meant by a "pressed glass blank for cutting." The law does not define these terms and one not an expert is ignorant of their meaning. As is usual with experts we have a variety of definitions. Thus John E. Marsden, a witness for plaintiff, testifies that: "all glass that cutters use are termed as blanks." And Carl J. Giometti, a witness for defendant says that: "A pressed blank for cutting is a lead glass with a design pressed on it."

But however the testimony may differ as to the meaning of trade terms, it is shown without contradiction that at the date of the agreement the only blanks in use for the making of cut glass were those made from lead glass. The testimony on plaintiff's side establishes such fact. Thus John E. Marsden, says: "What is known as a lead glass blank is what has been used among cutters continuously." And there is no testimony on either side inconsistent with such statement. As blanks for cutting made from lime glass were unknown to the trade at the time the contract was signed it is not easy to imagine

that such blanks could have been in contemplation of the parties or that it was the intention to subject such unknown articles to the finishing operation provided.

From the language of the contract as already pointed out and from the conditions existing at the time of its execution, it seems plain enough that the defendants did not violate the contract when they sold blanks for cutting made from lime glass. From such blanks the commercial article known as "cut glass" could not be manufactured and nothing could be produced but "imitation cut glassware" in the manufacture of which the parties agreed the patented inventions could not be used. The evidence, therefore, failing to show any violation of the contract on the part of the defendants or any intention of violating the same, it follows that the plaintiffs have not made out a case which justifies an injunction as prayed for.

*Error assigned* was decree dismissing the bill.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal* and *James S. Moorhead,* with them *Marshall A. Christy* and *Robert W. Smith,* for appellant, cited as to trade terms, Meigs v. Lewis, 164 Pa. 597; Bole v. Ins. Co., 159 Pa. 53; McKeever v. Iron Co., 138 Pa. 184; Strohecker v. Bank, 6 Pa. 41; McDonough v. Jolly, 165 Pa. 542; Miller v. Wiggins, 227 Pa. 564; McMillin v. Titus, 222 Pa. 500; Penna. Co. v. R. R. Co., 108 Pa. 621.

*George E. Reynolds* and *H. E. Marker,* with them *C. B. Hollingsworth,* for appellee.—Parol evidence is always admissible to show the common understanding of words and terms, applied technically in a trade or business: Saltsburg Gas Company v. Saltsburg Boro., 138 Pa. 250; McDonough v. Jolly, 165 Pa. 542; Lovering v. Miller, 218 Pa. 212; Silver v. Bush, 213 Pa. 195; Carey v. Bright, 58 Pa. 70; Codding v. Wood, 112 Pa. 371; Farmers' Bank of Reading v. Gilson, 6 Pa. 51; McLar-

ren v. Robertson, 20 Pa. 125; Noble v. Burke, 5 Philadelphia 526; Glenn v. Strickland, 21 Pa. Superior Ct. 88; Miller v. Wiggins, 227 Pa. 564; Koch v. Kuhns, 6 Pa. Superior Ct. 186; Dixon-Woods Co. v. Glass Co., 169 Pa. 167; Garman v. Potts, 135 Pa. 506; Tully v. Felton, 177 Pa. 344.

PER CURIAM, January 6, 1913:

The decree appealed from is affirmed at the cost of the appellant on the findings of fact and opinion of the learned president judge of the Common Pleas.