McKEE GLASS CO. et al. v. H. C. FRY GLASS CO.

(Circuit Court of Appeals, Third Circuit. January 29, 1918.)

No. 2310.

1. PATENTS ⊚⇒324(5)—INFRINGEMENT—REVIEW — PRESUMPTIONS — OMISSIONS FROM RECORD.

In contempt proceedings for violation of an injunction against infringement of a patent, where an item of a penalty imposed for compensation additional to profits and royalty was clearly based upon evidence not before the appellate court, it must be assumed that it was sufficient upon which to base the award.

2. PATENTS ⊚⇒318(6)—INFRINGEMENT—DAMAGES—PROFITS.

Where an infringer made profits on some sales and sustained losses on others, the patentee was entitled to recover the profits made, without deducting the losses.

3. PATENTS ⊚⇒319(1)—INFRINGEMENT—DAMAGES—LOSSES.

Though an infringer sustained losses on infringing sales, they inflicted injury on the patentee, entitling it to damages.

4. PATENTS ⊚⇒318(3)—INFRINGEMENT—DAMAGES—PROFITS.

A royalty, whether agreed to or imposed on an infringer, is an element of cost to be paid before profits can be made, and a patentee in case of

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an infringement is entitled to the amount of the royalty and the amount of the infringing profits above the royalty; but where the royalty was not included as a factor of cost, and the profits were thereby increased by the amount of the royalty which should have been charged, the patentee was not entitled to a royalty, in addition to the profits as so increased.

5. PATENTS ⊂⇒319(1)—INFRINGEMENT—DAMAGES—LOSSES.

On infringing sales, on which the infringer sustained losses, the patentee was properly allowed as damages an amount equal to a royalty agreed upon at one time as a proper charge for using the patented process under a license.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit by the H. C. Fry Glass Company against the McKee Glass Company and others. From a decree imposing a penalty on defendants for violating an injunction, they appeal. Modified and affirmed.

Kay, Totten & Powell, of Pittsburgh, Pa. (James I. Kay and Robert D. Totten, both of Pittsburgh, Pa., of counsel), for appellants.

Marshall A. Christy, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This matter arises out of contempt proceedings instituted against the defendants below for violation of a permanent injunction against infringement of the patent in suit (No. 628,027), and pertains to the amount awarded the complainant as compensation for its injuries.

This litigation was begun in 1906; it was bitterly fought through various state and federal courts (Fry Glass Co. v. McKee Glass Co., 239 Pa. 34, 86 Atl. 644; Blair v. Jeanette-McKee Glass Works (C. C.) 161 Fed. 355; Libbey Glass Co. v. McKee Glass Co. (D. C.) 216 Fed. 172, affirmed 220 Fed. 672, 136 C. C. A. 314); and it reached perhaps its final stage in a recent decree of the District Court (now before us on appeal) imposing upon the defendants a penalty for violating its injunction.

We are not concerned with this protracted litigation, except as it bears upon the proceedings for contempt of the court's final decree, in which violation of the injunction is admitted and entire contempt for the court's decree is shown.

The questions raised on this appeal are three: The first has to do with the principle upon which the court formulated a penalty against the defendants; the second and third relate to certain items in the amount of the penalty.

The defendants do not deny their liability to the complainant for injuries proven to have been sustained; but maintain, that in imposing the penalty, the trial court exceeded its powers by adding to the remedial amount ascertained a sum that is purely punitive. They argue that the purpose of a civil prosecution for contempt is remedial rather than punitive, and that the penalty to be imposed should correspond with and be no greater than the loss, expense, and injury which the complainant is shown to have sustained by reason of the

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defendants' misconduct and disobedience; citing Wells v. Oregon Ry. & Nav. Co. (C. C.) 19 Fed. 20; Christensen Engineering Co. v. Westinghouse Air Brake Co., 135 Fed. 774, 68 C. C. A. 476. We find that we are not called upon either to consider or decide any question of punitive and remedial penalties in contempt proceedings, because the record makes it very clear that the award in this case was within the principle contended for by the defendants, in that, it shows no attempt on the part of the court to impose a punitive penalty, but shows, on the contrary, that the court was careful to restrict its award to compensation for injuries actually sustained. The trial judge said:

"In fixing penalties for civil contempts, it seems to the court important that care should be taken to give the plaintiff full compensation for the injuries sustained, *and not more*."

The only question, therefore, is: Whether the trial judge in awarding the complainant indemnity for its injuries, abused his discretion by making an award in excess of injuries proved.

The penalty imposed amounts to $25,151.70. It is made up of several items, which in round numbers are as follows:

Net infringing profits realized by defendants.................... $ 8,000.00
Royalty at 6 per cent. on defendants' entire sales of $41,713.97.... 2,500.00
Complainant's expenses and costs, and master's fee............. 4,700.00
Additional compensation for complainant's injuries.............. 10,000.00

The assignments of error embrace all items except those of complainant's expenses and costs, and master's fee; but at the argument they were limited to the compensation item of $10,000.00 and the royalty item of $2,500.00.

The defendants charge that the court abused its discretion by allowing $10,000.00 as compensation for the complainant's injuries, in that, it arbitrarily made the allowance without any evidence of injuries sustained by the complainant to which such compensation is applicable. The defendants base this contention upon the theory that all matters of the complainant's injuries and compensations were referred to a master, who showed by his report that all injuries sustained were compensated for in the items of profits, royalties, expenses, and costs, therein set forth, and, that, therefore, there was no evidence upon which to predicate the court's award of $10,000.00 subsequently made for additional compensation. Of course, if this is the fact, the contention of the defendants is sound. What is the fact?

The contempt proceedings were conducted in open court and consumed three days. Many witnesses were heard, and there were offered in evidence the entire record of this case and of the case in the Pennsylvania state courts, in much of which litigation the trial judge had taken part and with all of which he was thoroughly familiar. It became clear at the hearing, that certain of the complainant's injuries arose from infringing profits which had enured to the defendants, and that an accounting of such profits was necessary. The trial judge, therefore, appointed a master to ascertain these profits and damages— "to assist [him] in arriving at proper pecuniary penalties which should

be imposed upon the defendants in relief of the plaintiff." After the master had filed his report, showing an accounting, the court said:

"The findings of the master as reported in aid of the court are based upon actual figures taken from books of the defendants and from the records of the case. They will not compensate the plaintiff for the injuries done it."

Continuing, the court said:

"The history of this litigation, shows that the defendants have been most persistent in their acts of infringement of the plaintiff's rights, and that they have in a marked degree treated not only the decrees but the jurisdiction of this court with contempt. It is plain from all the testimony in this case [by which we surmise the court meant that which was taken in open court as well as that which was taken before the master] that the plaintiff has suffered injury at the hands of the defendants to an extent which cannot be accurately measured in dollars and cents."

The court then added to the items of the master's report the disputed item of $10,000.00.

[1] The record, as it appears before us on this appeal, embraces only the testimony taken before the master upon which alone his accounting and findings were based. But there was testimony heard by the trial judge which was not heard by the master, to which, manifestly the trial judge alluded when he said:

"It is plain from all the testimony in the case that the plaintiff has suffered injury at the hands of the defendants which cannot be accurately measured in dollars and cents."

That testimony is not before us in this record. As his opinion shows, not only by its general trend, but by positive expression, an effort on his part to limit the penalty to compensation for injuries sustained, and for *nothing more,* it is clear to us that the trial judge based the $10,000.00 compensation item upon the evidence which he had heard and not upon the evidence which the master had heard. As there was evidence before the trial judge which is not before us, and as it is plain that in reaching his decree the trial judge considered that evidence, we must assume, on authority of Pound v. Turck, 95 U. S. 459, 24 L. Ed. 525, and Wagner v. Standard Sanitary Mfg. Co., 244 Pa. 310, 91 Atl. 353, that there was sufficient evidence upon which to base the award of $10,000.00.

[2] The subject-matter of the reference to the master was injuries sustained by the complainant arising directly from infringing sales. These were measured by profits earned and damages inflicted. As the infringing sales were of two classes, those creating profits and those carrying losses, the master's inquiry was directed to the amount of profits on the former, and the measure of damages on the latter, or on both. Against the defendants' contention that the complainant was entitled only to net profits on all sales after deducting losses on some from profits on others, the master held, we think correctly, that, as the complainant was not a quasi partner of the infringers, losses incurred by the defendants through their wrongful invasion of the complainant's patent were not chargeable to the complainant (Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809),

and, therefore, the complainant was entitled to all profits realized by the defendants without deduction of any losses they had sustained. We find no error in either the theory or amount of this finding.

[3] But the defendants made sales on which there were losses. Out of these, of course, there could arise no question of profits. But they were none the less infringing sales, which inflicted injury upon the complainant, entitling it to damages. The master did not distinguish between profit earning and loss incurring sales. He did not treat them separately, but awarded damages in the nature of a royalty against all sales. This he fixed at 6 per cent. on gross receipts from all sales by analogy to the royalty provided in a license previously agreed upon by the parties and afterwards cancelled. He justified his award upon the certainty of injuries inflicted as shown by the character and extent of the infringement, and by the fact that *the evidence before him* disclosed no other method of imposing damages.

[4] What the master did with respect to profit earning sales was to calculate profits without including a royalty as a factor of cost, and, after profits had been thus ascertained and awarded, he added thereto a royalty as an element of damage. We have the question, therefore, —Whether as between profits thus ascertained and the royalty subsequently added, the complainant has not received an award greater than its proven injuries? This question we must consider with reference to the part which a royalty plays in calculating profits, when a royalty is present, as it is in this case upon the master's award.

If there had been no infringement, and if the articles had been manufactured under a license to use the patented process, the royalty provided therein would have been a factor of cost to the licensee in the production of articles under the patent, and profits made thereon would be only so much as remained after paying the royalty. This is the way profits under a license are ascertained. As the articles here were produced not under license but by infringement of the patent, a like royalty is chargeable in the same way as a factor of cost in order to ascertain what profits were made by the infringement. A royalty, whether it be agreed to or be imposed, becomes an element of cost to be paid before profits can be made; so it must be included in a calculation before profits can be ascertained. If royalty is included as a cost, profits are reduced by the exact amount of the royalty; if excluded, profits are increased by the same amount. Therefore, it appears to us, that in compensating a patentee for what he has lost by the measure of what he would have earned but for the infringement, the patentee is first entitled to the amount of the royalty and then the infringing profits earned over and above the royalty; but, that he is not entitled to a royalty to cover what he himself would have earned or would have received from another but for the infringement, plus infringing profits above such royalty, and plus royalty again as damages. As the master in this case very properly found that the owner of the patent was entitled by way of damages to a sum which, but for the infringement it would have earned elsewhere as royalty, he should have included that as a factor of cost

248 F.—9

(payable, of course, to the patent owner), and thereafter ascertained the correct infringing *profits*. As he did not do this, the profits he ascertained were greater than the exact infringing profits by just the amount of the royalty with which the infringers should have been charged, and being greater by that amount, we do not think that the subsequent imposition of a royalty on the profit earning sales was warranted. The real and primary damage to the owner of the patent was in being deprived of the royalty value of the invention. If that value is restored to it once, either in the shape and by the name of damages or embraced in profits which are swollen beyond their proper figure because of the improper omission of royalty as a factor of cost, the result is the same and the owner of the patent is compensated for that injury. Or, stated in another way, as the gross profits which were ascertained in this case without designating a royalty as a cost factor are the same in amount as the royalty plus correspondingly lesser profits, we do not find error in the master's item of $7,945.93 for infringing profits. Our finding is, that a 6 per cent. royalty in the nature of damages should not be added thereto.

The difficulty which the master had in finding from the evidence *before him* a method of awarding damages for the infringing sales on which profits were earned, is explained perhaps by the fact that only a part of the evidence of the complainant's damages was before him; the other part had already been given before the court, and upon it, the court made its award of $10,000.00.

[5] While we hold that the award of damages in the form of a 6 per cent. royalty on profit producing sales should be disallowed, the same reasoning applied to loss incurring sales leads to an opposite conclusion. There, the defendants inflicted injury upon the complainant by invading its patent rights. Whether they made or lost by it, they deprived the complainant of earnings equal at least to the royalty value of its invention. The result was an injury to the complainant for which the defendants must pay in some way and in some amount. The way which the master thought was proper, was that which the parties themselves had previously adopted and then abandoned. This was by paying a royalty equal to 6 per cent. on the sales. That was what the defendants and the complainant thought at one time was the proper charge for using the patented process under license whether the licensee made or lost thereunder. As the defendants used it without license, it would seem that the same charge would not be improper in ascertaining the damages they thereby inflicted. Therefore, we think that a royalty of 6 per cent. should be charged as damages against the gross sales of $5,339.44 on which the defendants sustained losses, and, as we have said before, that a royalty of 6 per cent. charged as an item of damage in addition to profits as ascertained on the $36,374.53 of sales, should be disallowed. With this modification, we direct that the decree below be affirmed.