## WOODS et al. v. McCORD & CO.

(Circuit Court of Appeals, Seventh Circuit. June 18, 1926. Rehearing Denied September 29, 1926.)

No. 3646.

1. Patents ⊕═312(3)—Evidence of loss to plaintiff held insufficient to support an award of damages in patent infringement suit.

In patent infringement suit, where evidence showed a loss to defendants from manufacture and sale of patented device, evidence of loss of sales or profits to plaintiff from defendant's activities held insufficient to support an award of damages.

2. Patents ⊕═312(I).

Plaintiff, in patent infringement suit, has burden of proving loss of sales and loss of profits on sales made, alleged as basis for damages.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by Leonard G. Woods and another against McCord & Co. From a decree on the accounting, plaintiffs appeal. Affirmed.

See, also, 249 F. 203, 161 C. C. A. 239.

Thomas Benner, of Pittsburgh, Pa., for appellants.

Samuel E. Hibben, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. The District Court found infringement of certain claims of Woods' patents Nos. 904,665 and 969,933, and this appeal is from the decree on the accounting in the court below under that decree, in so far as it was affirmed by this court (249 F. 203).

Plaintiff, Union Spring & Manufacturing Company, manufactured railroad springs, and other products, from 1902 to 1909, at which time it added to its other lines the manufacture of the composite journal box under the Woods' patents.

From 1897, defendant was a manufacturer, in a large way, of articles used in the construction of railroad cars. It made journal boxes of grey iron, but, up to 1915, a large per cent. of the journal boxes made by it were made of malleable castings. On March 25, 1914, the commencement of the infringing period, which terminated July 20, 1917, it began the manufacture of the infringing composite, or built-up, boxes.

Since 1905, 85 per cent. to 90 per cent. of the journal boxes have been made from malleable castings. Of the infringing type of boxes, defendant sold, all told, about 270,000. No licenses or royalty contracts were ever made, so that, in the first instance, plaintiffs undertook, in the accounting, to reach the profits made by defendant. In the hearing before the master, after all disputes were cleared up, it was conceded that defendant lost $409,002.48. Plaintiffs then set up two contentions, viz. that they were damaged by (a) loss of sales, and (b) loss of profits on its own sales. Subsequently they claimed, and are here claiming, that they should be decreed punitive damages on the theory of wanton infringement.

After an extended hearing, the master found for the defendant, and was affirmed by the court. It was urged that there was a misapprehension by the master as to the law. We are of opinion, after an examination of the record, that the law was correctly applied by the master, and the only question remaining is, Was the master right in the conclusion he reached upon the facts?

[1] Plaintiffs undertook to establish before the master: (a) A normal profit, to be used as a measure in showing lost profits; (b) that, if defendant had not made the sales, plaintiffs would have done so and would have realized the profits therefrom; (c) that defendant's wrongful acts so reduced plaintiffs' sales that plaintiffs were deprived, on the sales they did make, of their normal profits. [2] Manifestly, the burden was upon plaintiffs to support those propositions by the

same kind and quality of proof as is required to establish any fact that cannot be demonstrated by mathematical calculation. This does not mean that, under no circumstances and at no state of the proofs, are presumptions and inferences to be drawn, and the master did not so find or intimate.

The substance of the master's conclusions is that plaintiffs did not sufficiently establish, by competent evidence, any contested proposition. Their first step was to attempt to show a normal profit in their own business, which could be used as a measure. In that attempt, the master and the District Court found, and we find, that they wholly failed, for various reasons.

Plaintiffs commenced the manufacture of their composite boxes in 1909. Instead of using the period between that date and the beginning of the infringing period, they took a period of 16 months, ending November 30, 1913, four months before the beginning of the infringing period. The period selected showed very considerable profits, which were fairly constant during that time. But it developed in evidence that, in their working papers, plaintiffs' accountants had taken a period of 44 months beginning July 31, 1910, a year or two after plaintiffs commenced the manufacture of the composite boxes, and ending March 31, 1914. That period showed great variation in the profits, and, for the whole period, they averaged very low. Inasmuch as plaintiffs never, before or since, approached the profits made during the selected 16 months' period and for other reasons shown in the record, the master found it to be a wholly untrustworthy measure by which to ascertain lost profits.

It also appears that, during the period of large profits, the depreciation account was very small, and, during the period for which recovery is sought, the depreciation account was very large, and there is such discrepancy between them, for which no satisfactory explanation is made, that it appears that one or the other cannot be justified.

There are eight journal boxes to a car. The record shows that, during the selected period of 16 months, the number of cars under construction was far in excess of the number under construction at any time during the infringing period, which in itself reduced the sales on all journal boxes.

Plaintiffs put in evidence a schedule, showing 15 customers and the composite box business done with them from January, 1912, to July 1, 1917, and also the composite box business done by defendant during the infringing period. It shows that, during the year 1914, the sales by both parties amounted to about one-half of plaintiffs' sales for 1912, and about one-third of their sales for 1913. And for 1915 the total sales were 100,000 less than plaintiffs' sales for 1913. At no time did the total sales for a year equal plaintiffs' sales for the year 1913, so that there must have been important conditions affecting the quantity of sales made by plaintiffs that were not chargeable to any interference from defendant.

Plaintiffs and defendant were large manufacturers of much experience, and both were, under ordinary conditions, quite successful. During the infringing period, plaintiffs sold 366,397 of the infringing type and defendant sold 270,435. Plaintiffs show that defendant sold its boxes at a price below plaintiffs', which ranged from 37 cents to $1.07 per box. Plaintiffs, during the infringing period, made a small profit. Defendant had, during that period, a loss much greater than the difference between the plaintiffs' selling price and the defendant's selling price. Unless that extraordinary loss is accounted for in the unusual general conditions then prevalent, it seems to us to be unexplained.

There is much evidence to indicate that plaintiffs' failure to make profits was not due either to sales made by defendant or because plaintiffs were unable to manufacture profitably, because of their reduced output, but was due to the evermounting costs of material and labor prevalent during most of the period of infringement. There is some evidence that plaintiffs would not have been able to supply the whole trade, if they had been called to do so, and there is also evidence that, for a time, they, to some extent, neglected the box business to do more profitable war work.

There is also evidence that defendant's box was manufactured under a number of patents, and, while it infringed plaintiffs' patents, there is insufficient evidence to show that the reduction in plaintiffs' sales, or their loss of profits, was due to the use of the infringing element by defendant. There are many other facts in the record that go to show why plaintiffs, with defendant wholly removed from the field as an infringer, could not have made any considerable profits, and why proof could not be had to establish, with a reasonable degree of certainty, any measure by which to compute damages. We find no basis or reason for awarding punitive damages in this case.

The decree should be, and is, affirmed.