**WEDGE et al. v. WAYNESBORO NURS-ERIES, Inc., et al.**

District Court, W. D. Virginia, at Harrisonburg.

March 1, 1940.

Chas. C. Reif, of Minneapolis, Minn., and John L. Abbot, of Lynchburg, Va., for plaintiffs.

H. H. Byrne, of Washington, D. C., and G. H. Branaman, of Waynesboro, Va., for defendants.

PAUL, District Judge.

By a decree of January 25, 1937, this court, as a result of a trial before it, adjudged that certain patents, No. 1,775,837, No. 1,775,838 and No. 1,991,478, issued to Ralph F. Wedge were valid and that they had been infringed by the defendants. The bill of complaint having prayed for an accounting of profits to the defendants and damages sustained by the plaintiff as a re-

sult of the infringement, the cause was, by an order of April 20, 1937, referred to a special master for a report as to the amount of the financial liability of the defendants. The matter now comes on upon the master's report filed March 30, 1939, and exceptions thereto taken by both parties.

The master observes that he had difficulty in arriving at his conclusions due to the paucity of the evidence introduced before him, the manner in which it was presented and the rather vague and uncertain nature of some of it; observations, the justification for which is apparent on considering the record made before him.

The infringement for which accounting was sought occurred over a period of approximately two years, from the spring of 1933 to the spring of 1935, at which latter time the defendants discontinued preparing and marketing the infringing plant package. The defendant under direction of the master filed before him a statement purporting to show all plant packages prepared and sold by them during the period of infringement, the prices at which and the persons to whom they were sold, the cost of preparing and marketing the same and other information designed to enable the master to make the report required of him. This information was necessarily the foundation of any findings made by the master and such other evidence as was introduced has a more or less direct relation to the matter contained in this statement.

The statement filed by defendants shows that during the period of infringement, the defendants sold an aggregate of 25,362 plant packages of which 978 were returned for credit, leaving 24,384 packages for which they were paid. That for the packages sold they received an aggregate of $7,895.15, from which is to be deducted the sum of $565.65 for credits allowed, leaving net total sales of $7,329.50. According to a further statement of defendants, purporting to show in itemized form the cost of preparing and marketing these plant packages, the aggregate cost was $11,704.51. From this it would appear, and it is so claimed by defendants, that their activities in preparing and marketing the infringing plant packages, during the entire period of infringement, resulted, not in profit, but in a loss of $4,375.01.

The plaintiff, while not in position to definitely contradict the figures shown by defendants' records, questions the accuracy of them, particularly in the statement of cost of production. It is charged that this account is padded and it is pointed out that many of the items are admittedly estimates—estimates which plaintiff charges are largely exaggerated. It is pointed out also that the amount stated to have been received from sales shows a wide discrepancy with the known prices at which the defendants advertised their packages for sale. This discrepancy is undoubtedly noticeable and, so far as I can find, has not been explained. It is testified (by a witness for defendant) that the price of their larger plant packages ranged from 75¢ to $1.25 each with a few at a higher price; that they sold a smaller package at 60¢ each; and that they allowed 40% discount to the trade. Even at the lower figure the sale of 24,384 packages would have aggregated substantially more than $7,329.50, stated to have been received, and this difference would have been increased in proportion to the sale of higher priced packages.

The master expressed his thought that the account filed by defendant is inaccurate and unsatisfactory. However, he was faced with the fact that it was the only substantial evidence going to show the business done by defendants in the sale of plant packages and the financial results thereof. No effort was made by the plaintiff to show definitely contradictory figures or to go further than suggest the inaccuracy of the statement. The result was that while the master felt unable to accept the defendants' account as being unquestionably accurate, he was forced to accept it as a basis for his conclusion that the defendants' infringement had not resulted in profits to them. Even assuming that the account is not accurate, it seems most probable that the defendants' operations in the infringing packages resulted in no profit. These took place for only about two years and it seems probable that the initial expense of equipment and materials for producing the packages and for advertising them to the trade, expenses attendant on launching a new product, were not compensated for by the sales made in the two years; that activities did not last long enough to absorb the initial or promotion expense.

■■ A plaintiff seeking recovery for profits made by a patent infringer bears the burden of showing that profit was made and with reasonable certainty the extent thereof. Dunkley Co. v. Central California Canneries, 9 Cir., 7 F.2d 972; Fox Typewriter

Co. v. Underwood Typewriter Co., 6 Cir., 287 F. 447. The master held that no showing had been made of any profits accruing to the defendants through their infringement and the court agrees with and confirms this finding.

The master, having disposed of the question of profits by concluding that none were shown to have been made, turned to the question of the extent of damages done to the plaintiffs through the infringement and the method of determining this amount. In considering this question, the master was likewise hampered by the somewhat indefinite nature of the evidence before him.

The plaintiffs submit that damages may be assessed either on the basis of loss shown to have been suffered by them as a result of the infringing competition or upon a royalty basis. The first of these is based upon the theory that where the owner of a patent is able to supply the whole demand for the patented article and he is forced to meet the competition of an infringer, he is damaged to the extent that sales are made by the infringer to persons who otherwise would have purchased from the patentee, and is entitled to recover the profits he (the patentee) would have made on sales lost to the infringing competitor.

In the instant case, Jackson & Perkins Company was the exclusive licensee of the patents for sixteen states in the eastern part of the United States including all in which the defendants sold any of their plant packages. The plaintiffs contend that every purchaser from defendants was a customer or potential customer of plaintiffs and that they are entitled to recover as damages the profits they would have made on the sales which in fact were made by defendants and which, so plaintiffs contend, would have come to them if there had been no competition. Evidence was introduced tending to show that plaintiff made a profit of approximately 25¢ on each plant package sold by it of the type similar to the bulk of defendants' sales and plaintiffs claim is on the basis of this profit on each of the 24,384 packages admittedly sold by defendants. The principles advanced by plaintiffs are no doubt, sound, but the difficulty is a lack of evidence justifying their application here. While there is a question of whether the figures submitted by plaintiffs do not exaggerate their accustomed profit, this is a detail which might be adjusted. The lack in the evidence goes further and affects the basic contention that sales made by defendants were sales lost to the plaintiffs.

It is true that the defendants sold their packages in parts of the territory covered by the license to Jackson & Perkins Company and it is in evidence that during the period of infringement salesmen for the plaintiffs called on dealers in the trade to whom defendants were selling and were unable to sell to them; and in one instance the dealer stated that he was having satisfactory dealings with defendants. But this is about the extent of the evidence. There is no evidence, so far as I can see, that the plaintiffs ever sold to any of the customers to whom defendants sold, either before 1933, or after 1935. In other words, it would seem that, while plaintiffs were unable to sell to these persons during the period of infringement, they were equally unable to sell to them either before or after this period. If I am correct in my reading of the evidence, it is not shown that any of the persons to whom defendants sold were customers of plaintiffs before defendants infringing product came on the market or became customers after the infringement ceased. This would indicate that plaintiff is complaining of sales to persons to whom it has never been able to sell and that defendants' market was one which for some reason has never been reached by the plaintiffs. This may not be the case, but such evidence as was introduced does not contradict it.

Another fact must also be considered in this respect. It is true that during the period in question the only two plant packages offering the distinctive feature of the Wedge patents, namely, a block of compressed peat around the roots of the plant, were those put out by the plaintiffs and by defendants; the defendants were the only infringer of the patent. But there were being offered a number of other plant packages sold by other persons which, while not possessing the feature referred to, consisted of plants packed in ornate cartons or boxes similar to those of the parties here. These packages were also competing. Their outward appearance was equally attractive and generaly speaking they were cheaper in price than the packages of plaintiff and, for that reason, made an appeal to the amateur and undiscriminating gardner attracted merely by appearance and by the novelty of purchasing a living plant packed in a decorated carton and who did not undertake to inquire into the respective merits

of a plant whose roots were packed in peat and one which used some other material. It is more than probable that the most severe competition came from these non-infringing packages. It may be here noted that while the plaintiff introduced evidence that their sales had fallen off during the seasons 1933–34 and 1934–35 as compared to 1932–33, these figures are of little value on the question of whether these losses were due to the infringement, for the reason that the years in question are known to have been those of serious business depression and there is no showing that sales revived after the infringing product was taken from the market.

It is settled that a patentee claiming damages on the basis of lost profits has the burden of proving loss of sales and loss of profits thereon. Walker on Patents (6th Ed.) Sect. 607; Woods et al. v. McCord & Co., 7 Cir., 14 F.2d 943; Oil Well, etc., Co. v. Acme Foundry & Machine Co., 8 Cir., 31 F.2d 898, at page 901.

It is not meant to say that the evidence shows that plaintiffs lost nothing through the sale of the infringing package. On the contrary, they probably did lose some sales and the profit thereon by the invasion of their exclusive market by the infringer. But the plaintiffs have failed to show with any degree of certainty that these losses occurred and, if they occurred, have failed to show the extent of them to any such degree of definiteness as would enable the court to make even a reasonable estimate as to loss suffered. It was the opinion of the master that the plaintiff had failed to show loss of profits in such manner as to justify fixing damages on this basis and with that holding the court is in agreement. See Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U.S. 641, at page 648, 35 S.Ct. 221, 224, 59 L.Ed. 398, where it was held that there was no adequate basis for an assessment of damages upon the ground of lost sales where, although "the number of drills sold by the defendants was shown, there was no proof that the plaintiff thereby lost the sale of a like number of drills or of any definite or even approximate number."

■■ However, contrary to the insistence of defendants, the fact that the evidence fails to justify an award either for profits made by defendants or for damages for loss of profits to plaintiffs does not require that the plaintiffs recover only nominal damages or none at all.

There was an infringement here and even if the defendants believed the patents invalid, as they contended at the trial, they knew that they took the chance of an adjudication of validity in litigation invited by their action. That the sale of a patented article without compensation to the patentee who has the right and has been accustomed to exact compensation for its sale does injury to the patentee may be assumed. And the fact that the patentee is unable to prove with accuracy the profits made by the infringer, or even that profits were made, or the loss of profits to himself, does not imply that the infringer goes scot free. That the infringer may have lost money does not excuse him. Walker on Patents, Sect. 607, citing McKee Glass Co. v. Fry Glass Co., 3 Cir., 248 F. 125, page 130 wherein it is said: "The defendants inflicted injury upon the complainant by invading its patent rights. Whether they made or lost by it, they deprived the complainant of earnings equal at least to the royalty value of its invention. The result was an injury to the complainant for which the defendants must pay in some way and in some amount."

In the absence of proof of profits made by an infringer or profits lost to the patentee, an established method of computing damages is upon a royalty basis. And this method the master was forced to adopt. The law is full of patent cases where damages have been assessed on a royalty basis and there has been much discussion of "established royalty" and "reasonable royalty". There seems to be a tendency on the part of counsel to regard these terms as having a highly technical meaning—a view having little justification. Ordinarily, they merely denote a fair and common-sense method of compensating a patentee for infringement where other methods of computing damages are unavailing or unsatisfactory. As said in McKee Glass Co. v. Fry Glass Co., supra, a master utilized a royalty basis because "the evidence before him disclosed no other method of imposing damages". And see Duplate Corp. v. Triplex Co., 298 U.S. 448, at page 459, 56 S.Ct. 792, 80 L.Ed. 1274.

After consideration of the evidence before him the master determined that a royalty of 10¢ on each plant package sold by defendants would be fair and reasonable by which to measure the damage which had been done to plaintiffs and accordingly fixed the amount of recovery at $2,438.40.

So far as is definitely shown, Jackson & Perkins Company was the only concern

licensed by the patentee. The royalties paid by this licensee were in the form of a percentage on the gross volume of business and this percentage varied somewhat from year to year, appearing to have been less as the volumes of sales were larger. For the years 1933, 1934 and 1935, the average of this percentage was 12.4% on the volume of business. Reduced to a per package basis the figures represented 7.2¢ on each package sold.

The defendants argue that a license to one person does not fix an established royalty and impliedly argue that where there is no evidence of a generally recognized and accepted royalty there can be no award on a royalty basis. This view is untenable. Had there never been any licenses under this patent the master would have been justified in fixing a reasonable royalty upon such evidence bearing on the subject as he was able to have produced before him. As said in Austin-Western, etc., Co. v. Disc G. & P. Co., 8 Cir., 291 F. 301 at page 304: "Where general damages by way of a reasonable royalty are allowed there is no mathematical formula for their determination. The purpose in view in any particular case is to determine what amount a person desiring to manufacture and sell the patented article would, as a business proposition, be willing to pay as a royalty * * *. Since no established royalty exists, the master and the trial court, for the purpose of determining a reasonable royalty, must resort to * * * other evidence."

The court further comments that royalties paid in similar situations is merely evidence bearing on the question of a proper royalty for the particular case and may be of only slight weight. And see Dunkley Co. v. Vrooman, 6 Cir., 272 F. 468.

The question therefore is whether the royalty of 10¢ per package fixed by the master is a reasonable one. The master had little evidence on the subject before him and probably the most pertinent of what he had was that relating to the royalty paid by Jackson & Perkins Co., the sole licensee, which, as before stated, represented 7.2¢ per package. The master's allowance was 10¢. There is no legal requirement that royalties be uniform and it is not uncommon for them to vary due to various reasons, such as volume of business, difference in territory of sale, the desire to maintain uniformity of price to the consumer and like causes. The very large volume of business done by Jack-

son & Perkins probably made it desirable to accord to them a royalty less than may have been justified to a smaller producer. This is not an unfamiliar procedure. For example, it is a customary practice that rates of charge for electric power are lessened as the volume of consumption increases and many products may be purchased at a more favorable price when bought in large volume.

It appears also that the cost of the plants, which were the primary feature of the product, was less to defendants than to plaintiffs, due to the locality in which they were grown, and it may well be that any royalty exacted from defendants would have been correspondingly larger in order that costs of production of the package might be equalized and neither licensee given an advantage in a competitive field. The court cannot say what considerations would have affected the patentee in fixing a royalty to be paid by defendants had such a contract been made. But it is apparent that there were reasons why it might have been in excess of that exacted from Jackson & Perkins Company and still be entirely reasonable as applied to defendants. The master, on consideration of such evidence as was before him, considered 10¢ a package as a reasonable royalty and there is nothing to show that this is unfair or improperly arrived at. It might have been slightly more or slightly less without being open to the charge that it was plainly erroneous. On the whole it seems to be as fair a determination as could be arrived at and no sufficient reason is shown for disturbing it.

The exceptions to the master's report raised, in general, the questions hereinbefore discussed. The defendants' exceptions, briefly stated, were to the effect that no profit from its sales having been shown, no recovery for other than nominal damages could be had; that there was no proof of an established royalty and not sufficient proof on which to base a reasonable royalty; that without proof of actual damage done and without proof of an established royalty it was error for the master to undertake to fix a reasonable royalty; that the alleged royalty paid by Jackson & Perkins Company could not be used as a basis for fixing a reasonable royalty, because, so defendants contend, there was lack of proof of its actual payment. It appears to be contended also that it was error in any event to fix the reasonable royalty at a figure larger than that paid under a license grant-

644

ed to another. All of these matters have, I think, been sufficiently discussed and disposed of in what has been said. They are all lacking in merit and will be overruled.

 As to plaintiffs' exception (No. 2) that damages should have been awarded on the basis of sales and profits lost to plaintiffs, that likewise has been discussed hereinbefore. The remaining exceptions taken by plaintiffs require further comment. The first of these (No. 1) is that the master erred in not recommending that the actual damages be increased in accordance with the provisions of 35 U.S.C.A. § 67, permitting the court to award not exceeding three times the amount of actual damages. It is contended that the infringement was wanton and wilful and calls for the application of this statute. The right to increase damages is one to be exercised in the discretion of the court, and, under all the circumstances shown, I do not think it should be exercised here. There is no doubt, I think, that during the period of infringement the defendants knew of the existence and terms of the first two Wedge patents, but they believed them to be invalid and also not infringed by defendants' product. When the third Wedge patent was issued, the defendants discontinued the production of their plant package. Although this discontinuance may have been actuated by the fact that suit had then been brought for infringement of the first two patents, their action indicated a willingness to suspend their production until the validity of the patents could be settled by the court. At the trial, their primary defense denied the validity of the patents and was presented with such force as the court held against them only after careful study and consideration—a fact which argues the good faith with which the defense was advanced. I do not think this is a case for the application of the triple-damages statute.

 The remaining exception taken by plaintiffs raises a question of some interest. It is contended that both the patentee and the licensee (Jackson & Perkins) were damaged and that the master should have allowed a sum based on the payment of a reasonable royalty to each of them separately. They cite Reliance Construction Company v. Hassam Paving Co., 9 Cir., 248 F. 701. In that case the patentee of a paving process had granted to an auxiliary company an exclusive license to use the process and to license others to use it. As I understand it from the opinion, the situation was that the patentee vested in the Hassam Paving Company the exclusive right either to practice the process or license others to practice it. The Hassam Company granted licenses to others on a royalty basis (per yard of paving) paid to it; and it paid to the patentee a royalty on all paving done under the process, whether by it or by others whom it had licensed to use the process. Another paving company practiced the process without a license and in a suit in which the patentee and the licensee joined as plaintiffs, the court held that damages might be awarded to each of them separately on a royalty basis. On the facts disclosed this conclusion would seem correct. In an authorized practice of the invention the defendant would have had to pay for its use a sum representing royalties both to the Hassam Company, from whom it obtained the right and to the patentee. It is to be noted that in the case in question the aggregate of the damages awarded in the form of separate royalties to the patentee and to the Hassam Company was approximately the same as the royalty which the Hassam Company had been exacting from those to whom it granted use of the invention and out of which, presumably, it paid a royalty to the patentee. The court did not undertake to compel payment to each of the plaintiffs of the full amount of a reasonable royalty, but rather it approved awards made separately to the patentee and to the Hassam Company, the aggregate of which was approximately (slightly higher) than the royalty which legal users of the invention had been paying for its use; and this was done as a method of insuring that both plaintiffs would be compensated, because each would have been entitled to a royalty on an authorized use of the invention. The case appears to have gone no further than to approve the action of a master in allotting the damages between the joint plaintiffs.

The factual situation in the instant case is different. I do not understand that Jackson & Perkins had any contract with the patentee giving it the right to grant licenses and exact a royalty therefor. Inasmuch as the royalties to the patentee were based on the volume of business done by the licensee, it is doubtful that the latter would have had even an implied right to authorize this business to be done by its sub-licensees from whom it could exact a royalty without responsibility therefor to the patentee. In any event, there is no evidence that it practiced the granting of licenses to others.

Under such circumstances, it would seem that any damage done Jackson & Perkins Company is to be determined by their loss of sales and consequent profits due to the competition of the infringer; and, as previously stated, there is no sufficient proof of such loss on which to base an award.

But different principles apply as to a patentee who has licensed the use of his invention on a royalty basis. As said in Consolidated Tire Co. v. Diamond Rubber Co., D.C., 226 F. 455, at page 459: "In estimating lost sales it is, of course, necessary to show that the patentee would have made the sales. Not so with licenses. Every wheel made up with Diamond rubber was a wheel upon which the plaintiffs lost a license, whether they would have manufactured it or not."

The law has never recognized the right of a licensee (as distinguished from an assignee) of a patent to maintain on his own behalf a suit against an infringer to recover separately damages done to the licensee. Even where the license is exclusive this is true. Paper Bag Cases, 105 U.S. 766, at page 771, 26 L.Ed. 959; Waterman v. Mackenzie, 138 U.S. 252, at page 255, 11 S.Ct. 334, 34 L.Ed. 923. Walker on Patents, Sect. 450. At law such suits must be brought in the name of the owner of the patent, although they may be for the use of the licensee. In equity it is said that the licensee and the owner of the patent must sue as joint complainants, as was done here. Walker on Patents, Sect. 450. The theory is, apparently, that in such a suit there may be an accounting of damages done to both complainants and I have little doubt that where there is legal justification for the award of damages to both, it is within the power of a court of equity to so frame its judgment as to fix the amount due to each complainant. This seems to have been the course pursued in Reliance Construction Co. v. Hassam Paving Co., hereinbefore discussed and upon which plaintiffs here rely.

But in this case it has been found that the only basis on which damage may be found is upon the damage done the owner of the patent through his loss of a reasonable royalty for its use. The outcome of this would indicate that the recovery is for the benefit of the patentee alone. But the court will not undertake to so direct. The plaintiffs have sued jointly and have indicated no separation of interest, and the judgment will be in their joint favor. The ultimate destination of the recovery will no doubt be determined by the contract existing between the plaintiffs or any arrangement they may make, matters which are unknown to the court.

It follows from what has been said that all exceptions taken by either party to the master's report are overruled. That judgment will be entered against defendants for $2,438.40. Interest will be allowed at 6% from the date of the master's report, March 30, 1939, and the defendants will be charged with costs, including the cost of the reference.